[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for dissolution of the marriage was brought by the plaintiff husband, date of birth October 16, 1938, against the defendant wife date of birth June 19, 1947. However at the time of the trial, the plaintiff appeared without counsel and the defendant therefore proceeded on her cross complaint.
The parties were married in July, 1977 in Jerusalem, Israel. They came to this country shortly thereafter. They separated in November, 1991. They had one daughter, Linda, born August 22, 1978. At birth she was denied the necessary oxygen for a healthy survival and suffered severe and permanent brain damage resulting in neonatal seizures and permanent retardation. As a result of a lawsuit brought because of this damage, she obtained a settlement of $1,125,000 which netted $666,785.60 after expenses and a payment of $50,000 to her father and mother plus their out-of-pocket expenses was made. The current balance is $652,413.75 (Child's exhibit K), which is in a trust in the names of the parents as guardians of Linda with People's Bank as the trustee.
The trust bought a house for Linda which is a two family and in which there is a tenant paying rent. It also provides for most of Linda's expenses including the purchase of a car, its maintenance, medical insurance, vacations and legal fees. It also pays the mother, with whom she lives, the sum of $100 per week for day-to-day expenses of the child and those of her mother.
CAUSE OF BREAKDOWN
The parties separated in November of 1991 when the plaintiff moved out of the house following an altercation in which CT Page 5096 the police were called. The evidence did establish that the cause of the breakdown was primarily the plaintiff's conduct in threatening and physically assaulting his wife and threatening her in the presence of their daughter, Linda. The court therefore finds that the plaintiff husband is primarily responsible for the breakdown of the marriage.
CUSTODY
While both parties have claimed custody and support for the minor child, it is apparent that at the present time the child Linda is doing very well in the custody of her mother and there appears to be no reason for changing that. In addition, the plaintiff father does not have any suitable place for the child. For him to have such a place, he would have to evict the mother from the house which belongs to the child. Not only is there no good reason for doing that, there is good reason for not doing it in the testimony of Dr. Matefy, a psychologist retained by the court to do an evaluation of what visitation rights the father should have. His conclusion was that the father should have no visitation rights, that the child is afraid of her father and that visitation should occur only if the child wishes it or only after the father has found through therapy what needs to be done to establish a better relationship with his daughter.
Consequently, custody of the child will remain with her mother.
FINANCES
It appears to the court that both parents are attempting to live on the trust fund provided for Linda. The father is very resentful of the fact that the mother has the use of the house belonging to Linda and is living comfortably there while he has confined himself to a grocery store which the defendant opened three or four years ago. He does also, however, use a motel so that his living situation is to say the least nomadic. He receives a Social Security disability pension resulting from a work related injury to his back in I think 1989. The pension amounts to $662 a month. This assumes that he is unable to work. He says that he is not working but living in the grocery store which the defendant had opened and in which she had worked for two or three years before the breakup of the marriage. He also says that he does sell lottery tickets and the minimum amount, according to the state lottery representative, that a store must CT Page 5097 sell in order to retain the license is $500 a week. He has been able to do that. The income from that has amounted to some $40 a week. In addition, however, he has stated that he does not put all of the tickets he sells into the computer which counts them. He then uses the proceeds from the lottery tickets he does not put into the computer to pay for other expenses, according to his testimony. Consequently, his income is a minimum of $193.95 a week.
One of the problems with the plaintiff's working is that he is receiving a Social Security disability pension which assumes that he is unable to work. He therefore must appear not to be working, and he does work at that assiduously.
The court made a site visit in the presence of counsel and the parties and found that the grocery store was well equipped to do business with items of merchandise on the shelves and large refrigerators displaying sodas and milk and other refrigerated drinks. Moreover, while we were there, people came in to buy things. The court also observed the place in which the plaintiff says he lives, which was accessed by a very narrow opening behind and to the side of the refrigerators and turned out to be an area about 4 x 8 with so much clutter it was impossible to determine its exact size and it looked unlivable.
While the plaintiff claims that all he does is sit in a chair and serve coffee to his friends who come in for chatting, he also admitted that he sold the lottery tickets and it was apparent from the site visit that he also sold merchandise, at least candy and chips. Further, he has filed applications with the state for the lottery licenses in which he stated that the store was open from 8:00 a.m. to 8:00 p.m. (See exhibit D.)
The ownership of the store has been variously described in documents submitted to the lottery department first as belonging to the defendant and then latter as belonging to the plaintiff. However, the evidence established to the court's satisfaction that the money for the merchandise and the fixtures came from the defendant and her family and that, therefore, those items belong to her.
The plaintiff's financial affidavit lists weekly expenditures of over $1,000, which includes payment on his car, his insurance, utilities, rent and the like. This leads the court to believe that he has access to much more money than he admits. CT Page 5098
The defendant, on the other hand, in her affidavit recites the money she receives from the child's trust of $100 a week plus rent received from the child's house and Social Security received from the child's Social Security. All of these amount to less than her total expenses, which are not paid for by the child's trust.
The defendant claims that she cannot work because Linda needs her to be available at all times. However, she did work in the store prior to the time that her husband was not working there or was not even there, and there was no indication of who was caring for Linda. She also testified that she had a kind of bakery in the basement and sold items from there. It seems to the court that there is no reason why she cannot obtain a part time job during the time that Linda is in school and perhaps have a beeper to permit her to be summoned should there be a need for her to go to the school for Linda.
Both parents must realize that this trust fund is for the child's benefit, not for theirs, and they must seek to pay for their own expenses from their own earnings rather than depend on the child's trust fund to pay for them.
The only asset which the parties own is a piece of land in Israel, which was bought in both names. However, the plaintiff testified that he had conveyed his interest to a third party. There was no other evidence of that conveyance beyond the plaintiff's testimony. That land was bought with part of the $50,000 that was given to the parties from Linda's settlement and the price was in the neighborhood of $40,000.
Having considered all the elements set forth in §§ 46b-81, 46b-82 and 46b-84, the court makes the following findings and orders:
1. The parties were married in July, 1977 in Jerusalem, Israel.
2. The marriage has broken down irretrievably and it is hereby dissolved.
3. There is one child, Linda, issue of this marriage born August 22, 1978.
4. The parties separated in 1991 when the plaintiff was forced CT Page 5099 to leave the home after an altercation, and the defendant and the minor child, Linda, have lived in the home ever since.
5. The best interest of Linda requires her to remain in her mother's custody, and sole custody is awarded to the defendant, which includes the right of the defendant to remain in Linda's house provided by her trust.
6. The plaintiff may not have visitation unless Linda requests it or a qualified therapist who has treated the plaintiff certifies that Linda would not be harmed by visiting with her father.
7. Linda's expenses are paid for from a trust fund established for her as the result of a lawsuit to redress the damage she suffered at birth through a lack of oxygen and which has resulted in her retardation.
8. Because Linda's expenses are primarily paid for by the trust fund and she also receives Social Security from her father's disability Social Security and the plaintiff's earnings appear to be minimal, it would be inappropriate and inequitable to apply the child support guidelines. The court therefore orders plaintiff to pay the defendant the sum of $50 a week as child support.
9. The court further orders both parents to share equally in any unreimbursed medical, psychological, hospital, psychiatric or dental expenses not covered by the insurance provided through the trust.
10. The services of counsel for the child were essential to protect the child's welfare in this matter, and the fees therefor of the attorney and guardian for the child should be paid by the trust. The court finds them to be reasonable, and they are approved as submitted.
11. Dr. Matefy's services rendered with respect to custody and visitation was also essential to the child's welfare, and his fees are reasonable and the court so finds, and the trust therefore should pay them.
12. So long as the plaintiff continues to operate the store, he must hold the defendant blameless and indemnify her against any existing liabilities or any future ones which he incurs CT Page 5100 by that operation.
13. The plaintiff shall remove the defendant's name from any contracts or other obligations which he incurs in the operation of the store.
14. If the plaintiff wishes to sell the store, the proceeds shall be divided equally between the parties since the money for the fixtures and the inventory originally came from the defendant and her family but the defendant has operated it since 1991.
15. With respect to the land in Israel which was bought by both parties from the proceeds of Linda's settlement, the property shall remain in both names unless the defendant wishes to sell it. If she does, then the net proceeds shall be divided equally between the parties.
16. The plaintiff shall keep his car.
17. The limited earning capacity of the defendant because of Linda's needs and the absence of any definitive evidence of the plaintiff's total income above $200 a week and the fact that the defendant is living in Linda's house with most of the household expenses paid by the trust plus a $100 a week to her requires that the amount of alimony to be paid at this time under these circumstances is limited to $1.00 a year which the plaintiff shall pay to the defendant.
18. The defendant is also ordered to pay his bill to Dr. Matefy in the amount of $345 within thirty days from date.
19. A wage execution order shall issue.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE